T.C. Memo. 1999-74


UNITED STATES TAX COURT


AL ZUNI OF ARIZONA, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

NASHAT KHALAF, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 18917-96, 18918-96.      Filed March 10, 1999.


<u>Henry W. Tom</u> and <u>Rick Kilfoy</u>, for petitioners.

<u>Rachael J. Zepeda</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes, additions to tax, and penalties, as follows:

Al Zuni of Arizona, Inc.

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|---------------------------------------|
| 1989 | $274,514 | $68,628 | $54,903 |
| 1990 | 194,163 | 48,541 | -- |
| 1991 | 142,726 | 35,682 | 28,545 |
| 1992 | 290,668 | 72,667 | 58,134 |

Nashat Khalaf

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|---------------------------------------|
| 1989 | $127,674 | $32,041 | $25,535 |
| 1990 | 51,682 | 13,204 | 10,336 |
| 1991 | 44,038 | 11,977 | 8,807 |
| 1992 | 245,164 | -- | 49,033 |

After settlement of many issues, the issues for decision involve the amount of income that is to be charged to petitioner Al Zuni of Arizona, Inc. (Al Zuni), on transfer of its inventory of Native American jewelry to Nashat Khalaf (Khalaf), its 100-percent shareholder, and the amount of capital gain that is to be charged to Khalaf with regard to receipt from Al Zuni of the jewelry inventory.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petitions were filed, Khalaf's residence was located in New Mexico.

Al Zuni was incorporated in 1976 as an Arizona corporation engaged in the business of buying and selling Native American jewelry.

Since the early 1980's, Khalaf was the sole shareholder of Al Zuni. From 1976 and through the years in issue, Khalaf traveled throughout the Southwestern United States purchasing and reselling on behalf of Al Zuni Native American jewelry.

Native Americans who live on reservations and who make and sell jewelry often do not have easy access to banks and typically would sell jewelry to Khalaf only for cash. Thus, over the years, Khalaf purchased for cash the items of jewelry that were added to Al Zuni's jewelry inventory.

In September of 1992, on Al Zuni's books and records there was recorded a debt obligation of Al Zuni to Khalaf in the amount of $196,510.

In mid-September of 1992, a transaction was entered into between Al Zuni and Khalaf in which Al Zuni transferred to Khalaf all of its then extant jewelry inventory.

In minutes of a special meeting of Al Zuni's board of directors that was held on September 15, 1992, the transfer of a portion of Al Zuni's jewelry inventory to Khalaf is described as a transfer in payment of Al Zuni's above-mentioned $196,510 debt

obligation to Khalaf.  In those same minutes, the transfer of the balance of Al Zuni's jewelry inventory to Khalaf is described as a sale by Al Zuni and as a purchase by Khalaf of the balance of the jewelry inventory for a total price of $671,413.

A resolution reflected in the September 15, 1992, minutes of Al Zuni's board of directors' meeting indicates that Al Zuni's purported sale of jewelry to Khalaf for $671,413 was contingent upon payment by Khalaf to Al Zuni of the $671,413 stated purchase price.

The evidence establishes that Khalaf did not pay to Al Zuni any portion of the $671,413 stated purchase price for the jewelry.  The parties herein, however, have stipulated, and we so find that on September 15, 1992, Al Zuni's jewelry inventory was transferred and that Al Zuni's total cost basis in the jewelry inventory transferred to Khalaf on September 15, 1992, was $538,000.

After the transfer to Khalaf of its jewelry inventory, Al Zuni had no remaining assets and conducted no further business activity.

On September 24, 1992, 9 days after the above transfer, Khalaf transferred apparently the same jewelry inventory to American Silver Jewelry Outlet, Inc. (American Silver), a related corporation of which Khalaf was president and in which Khalaf's daughter was the sole shareholder.  The nature and specific terms of the transfer of jewelry from Khalaf to American Silver are not disclosed in the record.  In a special September 24, 1992,

meeting of the board of directors of American Silver, the transfer of the jewelry from Khalaf to American Silver is referred to as a transfer "for sale by consignment" of jewelry with "a value of $671,413".

The trial record does not reflect any further sales or other disposition by American Silver of the jewelry inventory it received from Khalaf, nor does it reflect that Khalaf received any payment from American Silver for the jewelry American Silver received from Khalaf. The record herein does not contain any written inventory, documentation, cost records, or other description or list of the specific items of jewelry that during the years in issue were bought and sold by Al Zuni, by Khalaf, and by American Silver, nor of the items of jewelry that were transferred on September 15 and 24, 1992, respectively, from Al Zuni to Khalaf and from Khalaf to American Silver.

Twice a year, Khalaf would take a physical inventory of Al Zuni's jewelry on hand. Khalaf would provide to Murray Peck (Peck), the certified public accountant who prepared Al Zuni's corporate Federal income tax returns and Khalaf's individual Federal income tax returns, information regarding the physical inventory of Al Zuni's jewelry that Khalaf had taken and of the cost of jewelry that each year he had purchased with cash on behalf of Al Zuni. Each year, Peck would use that information to compute Al Zuni's cost of goods sold.

Since 1980, Peck has been the preparer of Al Zuni's corporate Federal income tax returns and of Khalaf's individual Federal income tax returns.

Al Zuni's corporate Federal income tax returns for 1989, 1991, and 1992 were untimely filed.  Al Zuni has not filed a signed Federal income tax return for 1990.

On Al Zuni's 1989, 1990 (unsigned), 1991, and 1992 corporate Federal income tax returns, there were reported each year the following total costs for jewelry inventory purchased, sold, and yearend jewelry inventory:

| As Reported on Al Zuni's Federal Income Tax Returns | | | | |
|---|---|---|---|---|
| Cost of | 1989 | 1990 | 1991 | 1992 |
| Jewelry purchased | $696,795 | $1,242,051 | $1,634,220 | $1,845,156 |
| Jewelry sold | 560,426 | 985,030 | 1,536,380 | 1,908,386* |
| Ending inventory | 246,369 | 503,390 | 601,230 | – 0 – |

> \* After subtraction of jewelry with a reported cost of $538,000 to reflect transfer of the jewelry inventory to Khalaf.

On Al Zuni's 1992 corporate Federal income tax return, which was prepared using the accrual method of accounting, the transfer of jewelry to Khalaf was reflected as a "transfer".  The transfer is not expressly reflected as either a sale or as a distribution to Khalaf.  On Al Zuni's 1992 corporate Federal income tax return, no gain or loss was reported with respect to the September 15, 1992, transfer of Al Zuni's jewelry inventory to Khalaf.

There was reflected on Al Zuni's 1992 corporate Federal income tax return a loan to Khalaf in the amount of $460,600. This $460,600 purported loan apparently related to the $671,413 stated total purchase price for the jewelry transferred to Khalaf, less the $196,510 loan that Al Zuni owed to Khalaf and that was treated by Al Zuni and Khalaf as paid off upon transfer to Khalaf of the jewelry inventory.

The purported $460,600 loan from Al Zuni to Khalaf in connection with the transfer of jewelry inventory to Khalaf was not reflected by a promissory note or by any other loan documentation. No payments of principal or interest were ever made by Khalaf on the $460,600 purported loan owed to Al Zuni.

On Al Zuni's corporate Federal income tax returns for 1983 and subsequent years, the amount of Khalaf's capital investment in his shares of stock in Al Zuni was reflected as $486,000.

On his 1992 Federal income tax return, Khalaf did not report income or gain with respect to his receipt of jewelry from Al Zuni.

On American Silver's corporate Federal income tax return for its taxable year ending September 30, 1993, a loan payable to Khalaf in the total amount of $671,412 was reflected relating to American Silver's receipt on September 24, 1992, of the jewelry inventory from Khalaf.

On audit of Al Zuni, respondent determined that on September 15, 1992, Al Zuni distributed, rather than sold, all of its extant jewelry inventory to Khalaf, that the September 15,

1992, transaction between Al Zuni and Khalaf constituted a distribution to Khalaf in complete liquidation of Al Zuni, that the jewelry inventory Al Zuni transferred to Khalaf had a cost basis to Al Zuni of $538,000, a total fair market value upon distribution of $671,413, and that Al Zuni therefore realized on the distribution business income of $133,413.

On audit of Khalaf, respondent determined that Khalaf had a cost basis of zero in his shares of stock in Al Zuni, that the value of the jewelry inventory Khalaf received from Al Zuni on September 15, 1992, was $671,413, that a portion of the jewelry inventory Khalaf received represented a repayment to Khalaf of the $196,510 purported loan obligation Al Zuni owed to Khalaf, and that the balance of the jewelry inventory Khalaf received with a value of $474,903 represented taxable capital gain income to Khalaf received in exchange for his shares of stock in Al Zuni.

## OPINION

Nature of Transaction

Respondent treats the September 15, 1992, transfer of jewelry inventory from Al Zuni to Khalaf as a distribution under section 331 in complete liquidation of Al Zuni, which treatment petitioners do not seriously challenge. Rather, primarily petitioners challenge respondent's determination of the fair market value of the jewelry inventory transferred to Khalaf, of Al Zuni's cost basis in the jewelry inventory, and of Khalaf's cost basis in his shares of stock in Al Zuni.

Generally, in analyzing the factual issue of whether a transfer of property to shareholders constitutes a distribution under section 331 in complete liquidation of a closely held corporation, it is the intent to shut down and liquidate the corporation that is controlling, not whether a plan of liquidation was formally adopted. See Genecov v. United States, 412 F.2d 556, 561-562 (5th Cir. 1969); Kennemer v. Commissioner, 96 F.2d 177, 178 (5th Cir. 1938), affg. 35 B.T.A. 415 (1937).

The transfer on September 15, 1992, to Khalaf of all of Al Zuni's extant jewelry inventory, the termination of any further business activity of Al Zuni, and the failure of Khalaf to make any payments on the $460,600 loan purportedly owed to Al Zuni relating to the transfer constitute strong evidence that the transfer of Al Zuni's jewelry inventory to Khalaf constituted a liquidation of Al Zuni and a distribution to Khalaf, not a sale. We so hold.

Income of $133,413 Charged to Al Zuni

Section 336(a) provides generally that gain or loss is to be recognized by a corporation on distribution of its property in complete liquidation. The gain is to be computed based on the fair market value of the property distributed over the corporation's cost basis in the property.

Fair market value is defined as the price at which property would change hands between willing buyers and sellers, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. See United States v.

Cartwright, 411 U.S. 546, 551 (1973); Collins v. Commissioner, 3 F.3d 625, 633 (2d Cir. 1993), affg. T.C. Memo. 1992-478; Estate of Hall v. Commissioner, 92 T.C. 312, 335 (1989).

On the evidence before us in these cases, the best indication of the fair market value of the jewelry inventory transferred to Khalaf is found in the representations of value set forth in Al Zuni's and in American Silver's documentation relating to the transaction at issue in these cases, particularly the minutes of Al Zuni's September 15, 1992, board of directors' meeting which reflect a value for the jewelry inventory transferred to Khalaf of $671,413.

At trial, Khalaf opined generally as to the decline during the 1980's in the value of Native American jewelry to the effect that such jewelry purchased in the early to mid-1980's would, in 1998 (at the time of the trial), be worth only 10 to 30 percent of what it had cost. Khalaf did not opine as to the general value of such jewelry in 1992.

We note that at trial neither party provided timely independent expert witnesses as to the value of the jewelry transferred to Khalaf. Even if experts had been called, due to Al Zuni's and Khalaf's failure to have available a written inventory, books and records, or other documentation describing the specific items of jewelry transferred to Khalaf, such experts would not have had sufficient information to make professional valuations of the jewelry inventory transferred to Khalaf, and their testimony would not have been helpful.

On the limited evidence before us (including petitioners' and American Silver's written contemporaneous representations as to the value of the jewelry, the evidence reflected on Al Zuni's tax returns as to the cost of the jewelry inventory that Khalaf purchased for Al Zuni in 1990, 1991, and 1992 in the $1 million plus range and regarding the cost of the jewelry inventory Al Zuni had on hand at yearend 1990 and 1991 in the one-half million dollar range), we conclude that the value of the jewelry inventory transferred to Khalaf on September 15, 1992, was $671,413.

With regard to Al Zuni's cost basis in the jewelry inventory transferred to Khalaf on September 15, 1992, the parties stipulated that the jewelry inventory had a cost basis to Al Zuni of $538,000. Subtracting the $538,000 cost from the $671,413 value of the jewelry inventory transferred from Al Zuni to Khalaf produces income to Al Zuni of $133,413.

Petitioners contend that certain checks totaling $133,000 written during 1992 by Khalaf on Al Zuni's bank account in favor of Khalaf, Khalaf's daughter and son, and cash should be treated as additional purchases of jewelry on behalf of Al Zuni, and should be treated as increasing Al Zuni's cost basis in the jewelry inventory by at least $133,000 and as eliminating essentially all gain on the transfer of the jewelry inventory to Khalaf. No credible evidence indicates that these checks constitute purchases of jewelry inventory. Petitioners' attempt

to violate the stipulation of facts as to Al Zuni's cost basis in the jewelry inventory is rejected.

We sustain respondent's adjustment charging Al Zuni with income in the amount of $133,413 with regard to the September 15, 1992, transfer of jewelry inventory from Al Zuni to Khalaf.

Capital Gain Income of $474,903 Charged to Khalaf

Section 331 provides that amounts received by shareholders in liquidation of a corporation shall be treated as full payment in exchange for the shareholders' shares of stock in the corporation. Under section 1001, a gain or loss realized by shareholders upon receipt of property in complete liquidation of a corporation is determined by comparing the value of the property distributed with the cost basis the shareholders had in their shares of stock.

We have concluded that the jewelry inventory Khalaf received from Al Zuni in September of 1992 had a value of $671,413. Respondent reduced this amount by the $196,510 principal amount of the loan that Al Zuni apparently owed to Khalaf. As explained, respondent treated Khalaf as having a zero basis in his stock in Al Zuni, and respondent calculated that Khalaf realized $474,903 in capital gain income on receipt from Al Zuni of the jewelry inventory. The only issue remaining with regard to this income adjustment is the amount of Khalaf's cost basis in his shares of stock in Al Zuni.

Respondent contends that Khalaf has not established that he had any cost basis in his shares of stock in Al Zuni and that the

full $474,903 constitutes taxable capital gain income to Khalaf. Petitioners contend that Khalaf's cost basis in his shares of stock in Al Zuni was at least $486,000.

At trial, Khalaf and Peck testified that Al Zuni was incorporated in 1976 with a capital contribution of property of $360,000 and that in 1983 Khalaf made an additional cash contribution to Al Zuni of $126,000. Khalaf thus contends that his total cost basis in his stock in Al Zuni was $486,000, an amount that fully offsets the $474,903 capital gain income that respondent charges to Khalaf.

The trial record is not complete with regard to Khalaf's capital investment in Al Zuni. No stock record book or canceled checks were offered into evidence that provide verification of Khalaf's basis in his shares of stock in Al Zuni. In evidence, however, are copies of Al Zuni's corporate Federal income tax returns for 1983 and later years in which Khalaf's capital investment in his shares of stock in Al Zuni is consistently reflected as $486,000.

Based on the limited evidence before us on this issue and in light of Khalaf's testimony and the invested capital reflected on Al Zuni's corporate Federal income tax returns, we conclude that on September 15, 1992, Khalaf's cost basis in his shares of stock

in Al Zuni was $486,000, and we conclude that Khalaf realized no capital gain income on the distribution from Al Zuni to him of Al Zuni's jewelry inventory.

<u>Decisions will be entered under Rule 155</u>.